Stevenson executed and delivered the mortgage to Albery, and Albery afterwards assigned and transferred it to the plaintiff. In May, 1893, Stevenson sold and transferred his title in the real estate to the defendant, Weisman. By the terms of the deed from Stevenson to Weisman, as a part of the consideration, the latter, as grantee, assumed and agreed to pay this mortgage.
On March 1, 1895, Weisman sold and deeded the property back to Stevenson. By the terms of the deed, Stevenson assumed and agreed to pay off and discharge said mortgage indebtedness. Plaintiff, the mortgagee, took no part in the transactions between Stevenson and Weisman, and was not consulted.
Weisman testifies that neither plaintiff nor Mr. Albery ever made any claims on him for money or interest during the time he held the property. But Weisman says that during the time he held the title he made three payments of interest on the mortgage note at Sessions Bank. He says that he understood he was to pay this mortgage debt when he bought the property from Stevenson.
The mortgage indebtedness did not become absolute until after Weisman had reconveyed the title back to Stevenson. Stevenson testifies that about the date of maturity of the mortgage he paid interest to Mr. Albery, plaintiff’s agent, and at that time he asked Mr. Albery for an extension of time on the mortgage note; that Mr. Albery agreed to an extension, and told Stevenson if the interest was paid promptly he would extend it.
There is endorsed on-the note: “Payment of this note is. hereby extended for one year, W. H. Albery.”
It does not appear that Weisman had any knowledge of this extension on the note. There was evidence offered by Weisman tending to show that Stevenson was solvent when Weisman conveyed the property back to him, but was insolvent when the mortgage became due at the date to which it was extended. The proceeds of sale of the mortgaged premises were insufficient to pay said mortgage indebtedness, and there is remaining due and unpaid thereon $916.30. It is here sought to hold said *447 Weisman liable for payment of said stun on Ms said contract with Stevenson.
Mr. Weisman, by his defense, claims that when he conveyed this property to Stevenson, the agreement incorporated in the-deed from Stevenson to him, by which he assumed payment of this mortgage, was rescinded and was done before any action of any kind was taken, either by Mr. Albery or the plaintiff, to hold Weisman responsible for this indebtedness. Also, that Stevenson was solvent when the property was reconveyed to him, but was insolvent when the extension terminated, and has. so remained ever since. And that the extension was granted by Mr. Albery without any knowledge of this fact on the part of 'Mr. Weisman.
A solution of the question is not .without its difficulties. TMs; is because of the apparent conflict of authorities, and especially some later decisions of our Supreme Court not in apparent accord with the earlier decisions.
Learned counsel on both sides of this issue have furnished briefs of the highest merit, and have argued the issues with, skill and ability that commends my highest admiration. Yet, it has been with considerable labor and investigation that I have-reached my conclusions.
The apparent conflict of authorities go both to the question of rescission, and extension -of time of payment. In Trimble v. Strother, 25 O. S., 378, the court held:
“In an action to recover a debt which the defendant agreed with a tMrd party to pay the plaintiff, it is a good defense to show that before the plaintiff assented to, or acted on the promise made in his favor, the agreement had been rescinded.
“In such ease, where the plaintiff has not been induced to alter his position by relying, in good faith, on the promise made in his favor, the defendant is not estopped from setting up any defense which he could have set up against the enforcement of the contract by the other contracting party. ’ ’
The facts are that Trimble entered into a written agreement with R. L. & Co., whereby the former in consideration of the sale and transfer to him of the firm assets, assumed to pay the liabilities of said firm. Strother was a creditor of R. L. & Co., *448 and founding his action on the written agreement he sued Trimble to recover the amount due him from said firm. There were two defenses to the action. One was that the claim of Strother was not among the claims furnished defendant by said firm, and that the firm represented to him that Strother had no claim against it.
Trimble had notice of the claim of Strother against the firm; the agreement by which Trimble assumed to pay the liabilities of said firm, had, by the consent of all parties to it, and upon certain considerations in the answer set forth, been rescinded. The court held that because the plaintiff assented to or acted on the promise made in his favor, a rescission of the agreement by the parties thereto constituted a good defense, that plaintiff’s rights rested solely on the agreement.
The question next arises as to whether the above rule would apply to a purchaser of real estate, who, by the terms of his contract, assumes to pay a mortgage indebtedness existing on the property where there has been a rescission before the mortgagee has altered his position. This brings us to a consideration of the case of Brewer v. Maurer, 38 Ohio St., 543. This was an action to recover on a deficiency on the sale of mortgaged premises against those who had purchased, and, as a part of the consideration, had assumed and agreed to pay the mortgage indebtedness. Among other defenses was that French, the grantor of the defendants, and in whose deed the covenant is contained, for a good and valuable consideration, has released and discharged these defendants from all liability to him, French, on account of >said covenant.
The court cites in point Trimble v. Strother, supra,, and says:
“In the ease at bar, the answer alleges that after plaintiffs in error had accepted their deed from French, containing the agreement to pay, he, for a valuable consideration, released and discharged them therefrom. Giving this answer a liberal interpretation instead of a technical one, we think it a sufficient plea of release, and, therefore, the demurrer of the plaintiff below should have been overruled. No such release after the rights of the mortgagee had become fixed, would operate as a discharge. The contract for the benefit of the mortgagee was one which he could avail himself of or not, at his election, but until *449 he had done some act which fixed his right, it was competent for the parties thereto, in good faith, and for a valuable consideration, to rescind or cancel it. ’ ’
By the holding of the above ease such rescission is a good defense if it rests upon a valuable consideration, and if no rights of the mortgagee have in the meantime become fixed, and he has not been induced to alter his position by relying, in good faith, on the promise made in his favor.
Before discussing the question as to whether the facts in the case at bar fit the case of Brewer v. Maurer, supra, I desire now to cite some of the later decisions of our. Supreme Court bearing on the question.
In Poe v. Dixon, 60 O. S., 124, thg main question there was as to the right of the grantor to maintain an action for indemnity against the grantee on the recital and promise in the deed by the grantee to assume and pay the mortgage debt, the grantor theretofore having paid the deficiency. The court in the above ease held in the syllabus that where the deed recited in substance, “the premises are subject to mortgages and notes to the amount of $-, with interest, which the grantee assumes to pay, ’ ’ that the promise thus arising runs not to the grantor, but to the mortgagee, whose debt is thus assumed, and the latter, although he is not a party to the deed, and may not have known of the arrangement when it was made, may, when the promise comes to his knowledge, maintain an action thereon.
In the above case the mortgage was foreclosed in 1880, for a sum insufficient to pay the mortgage debts which Poe as grantee from his grantor, and also defendant as grantee of Poe had assumed. The defendant grantee having failed to pay the deficiency, it was paid by the plaintiff in error at different times, and nearly eight years after the date of the last payment he began this action to recover of defendant the aggregate amount thus paid, with interest.
The court in the opinion say:
“Mr. Poe, the plaintiff in error, had become personally bound for the payment of the debts, although they were also secured by mortgages on the premises involved, and the facts further *450 show that Mrs. Dixon, the defendant in error, had for a valuable consideration assumed their payment. A novation was not effected; that is, the mortgage creditors did not accept Mrs. Dixon’s promise to pay these debts in lieu of that of Mr. Poe, and discharge the latter. In fact, it does not appear that the .creditors had any knowledge of the transaction. Poe could not shift from himself to her the obligation he was under to these creditors except by their consent. He, therefore, also remained personally liable for the payment of these debts, notwithstanding he had procured her to assume them. He was still bound to the creditors, yet as between himself and Mrs. Dixon the debts became hers. This result follows from the application of the plainest principles of rational justice to the facts. He was bound for these debts, and for a valuable consideration paid by him to her, she assumed to pay them and hold him harmless.
“As between themselves, the one who has thus assumed the debt is regarded as the principal debtor and the other as surety. ’ ’
The gist of the decision is, in the language of the court:
“The promise thus arising runs not to the grantor, but to the mortgagee, whose debt is thus assumed, and the latter, although he is not a party to the deed, and may not have known of the arrangement when it was made, may, when the promise comes to his knowledge, maintain an action thereon.’’
Whether the ruling in Brewer v. Maurer, supra, was intended to be effected by the above holding, does not appear. Nor, whether that case was contemplated at all. However, that may be, the holding in the Poe case suggests the question as to what right the grantor and grantee have to enter into a valid contract to rescind a promise that runs to the mortgagee only.
Both the Trimble case and the Brewer case turn on the holding that the rights of the mortgagee are not fixed, that is, he has not assented to the provision made for the payment of his mortgage debt, and he has not been induced to alter his position by relying, in good faith, on the promise made in his favor, and until that is done he has no fixed rights in the promise made, and the grantor and grantee can rescind the promise made to pay his mortgage debt. But the court in Poe v. Dixon, supra, hold, not only, “that the promise runs, not to the grantor, *451 but to tbe mortgagee,” but further holds that the latter, “although he is not a party to the deed, and may not have known of the arrangement when it was made, may, when the promise comes to his knowledge, maintain an action thereon.”
It would seem that the most conservative interpretation of this language would favor the conclusion that the rights of the mortgagee in the promise made were fixed when the grantee assumed to pay the mortgage debt, whether the mortgagee knew of the arrangement or not, or whether he had been induced to alter his position or not, by relying on the promise ma,de.
There is still a later ease — University v. Manning et al, 65 O. S., 138. In this case the mortgagee sought to recover against the mortgagors judgment for a deficiency after foreclosure and sale of the mortgaged premises. Among other defenses set up, was that after giving the note and mortgage in question the defendants sold the real estate to one Babbitt, who, as part of the consideration, assumed and agreed to pay to plaintiff the mortgage note sued on; that the agreement was in writing and incorporated in the deed to Babbit; that plaintiff was advised' thereof and consented thereto, and received the interest on said note from Babbitt and assigns from 1887 to 1894; that subsequent to 1887, the land was sold by Babbitt to Slaght, and by Slaght afterwards sold to his sister; that the note became due April 30, 1890, and that the payment of the same was extended by plaintiff at maturity and thereafter every six months till 1894, by the agreement with plaintiff and said purchasers, without the knowledge or consent of defendants, for a valuable consideration; that defendants claim that after the sale of the real estate they occupied the position of sureties on the note, and that by reason of the extension of time of payment and so receiving the interest thereon, without their knowledge and. consent, they are released. The court held the claim of defendants on the facts to be not sound and say:
“That as between the mortgagor and the purchaser, the general relation of surety and principal may be created by reason of their contract can be conceded, but this falls very far short of changing the relation of á mortgagor from a principal to a surety, as respects the mortgagee. The mortgagor has received *452 the full consideration, and has executed his solemn promise in writing to pay the obligation unconditionally. The sale of the mortgaged property is made between the parties to it solely for their advantage, and in no sense for the benefit of the mortgagee. He need not know, and ordinarily does not know, anything about the transaction until after it is completed. If he happens to know that the negotiation is in progress, it is not within his power to arrest it, nor has he any voice in shaping it. He is absolutely helpless to prevent it, as is a total stranger. Incidentally it may work to his advantage. That is, being an agreement with the original payor to'pay the debt, the creditor may, if he so elect, take advantage of it. But the agreement is not made for his benefit; as before stated, it is wholly for the benefit of the parties to it. Nor could they compel the mortgagee to recognize the sale or look to the purchaser for the payment of the debt.”
The above case settles the question that the contract is not made for the benefit of the mortgagee but wholly for the benefit of the parties to the contract. Yet, there is nothing in the opinion that in any sense affects or takes away any of the rights of the mortgagee. So far as that is concerned, he may, if he so elects^ take advantage of the grantee’s assumption to pay the mortgage debt.
Does the contract in the case at bar bring it within the provisions of any of the .authorities cited ?
In the first place what was the contract of rescission between Stevenson and Weisman, and had plaintiff any fixed rights in relation thereto before Weisman reconveyed the property to Stevenson ?
After Weisman had -paid some three or four installments of interest on the mortgage debt to plaintiff’s agent, covering a period of about two years, by reason of having assumed to pay the mortgage as grantee of Stevenson, he sold and reconveyed the property back to Stevenson, and by the terms of the deed of conveyance Stevenson assumed the payment of this mortgage. That was the contract, and as the evidence shows constituted the consideration for rescission of the original contract, by the terms of which Weisman assumed*and agreed to pay this mortgage.
*453 Did Stevenson assume to pay anything more than he was already under obligation to pay? lie was the maker of the note and mortgage, and was then, and is now, liable for the payment of that debt. By assuming to pay the mortgage debt, he did not add any liability so far as his relations to the mortgagee were concerned.
True, when Weisman took as' grantee from Stevenson, and assumed to pay the mortgage, then, so far as the relations between Stevenson and Weisman were concerned Weisman became the principal ■ and Stevenson the surety. That is, Stevenson might have paid the deficiency after sale, and been indemnified in an action against Weisman. By a reconveyance from Weisman to Stevenson, by the terms of which Stevenson assumed and agreed to pay the mortgage, instead of adding any additional liability on the part of Stevenson to the mortgagee, would operate to change the existing relations between Stevenson and Weisman by making Stevenson the principal and Weisman the surety.
There is nothing in the contract to show that Stevenson released Weisman as a surety. The only change in their relation is that if the deficiency can be recovered against Stevenson, then Stevenson- could not require Weisman to reimburse him, because Weisman is now the surety of Stevenson, whereas, before, Weisman was the principal, and Stevenson could require him to pay the debt.
Suppose Weisman had sold to a third party — a stranger— and the grantee assumed to pay the mortgage, just as recited in the deed from Weisman to Stevenson. This would operate to change Weisman from a principal to a surety, as between himself and his grantee, but it would not affect his relations to the mortgagee, and the mortgagee could hold him on his promise, regardless of his sale and the changed relations between him and his grantee.
Whatever the intentions of the parties in that regard may have been, the proof fails to show a contract by the terms of which Weisman was to be released.
Counsel propound this question: If Stevenson had been solvent, and had been sued on his note, and paid it, and had *454 • then brought suit on assumption of "Weisman, could he have recovered? No, he could not, because as between the two, Weisman when he reconveyed to Stevenson, by the terms of sale, Stevenson assumes to pay the debt. Then Weisman merely ■ became a surety as to Stevenson. And this is the sole reason why he could not require Weisman to reimburse him. But that would not alter the right of the mortgagee to sue either because the mortgagee’s rights are not affected by the contract relation between the grantor and grantee, he not being a party thereto. Hence the shifting of relations as principal and surety between Stevenson and Weisman in no way affects the rights of the ■mortgagee. It is claimed that neither plaintiff nor her agent ever knew that Weisman owned the property, and that neither ever made any claim on him for payments of the money or the interest during the time he 'held the property. But notwithstanding that, the evidence shows that Weisman paid the interest on the mortgage during the two years he owned the property. To whom did he pay it? He paid it to plaintiff’s agent, and it was accepted by him and credited on the note. It is not claimed by Weisman that he did not pay it to any one not authorized by plaintiff to accept it. By paying the interest, Weisman was himself inducing plaintiff to alter her position, tie certainly could not be heard to say now that she did not know that he was the owner, because he did not tell her, and at the same time pay her the interest as the owner, because he knew he was liable for the debt on his assumption to pay it. As to the question of the release of Weisman because of the extension of time of payment of the note made by plaintiff to Stevenson, after the reconveyance to him by Weisman, I do not find that such extension releases Weisman. I think the case of University v. Manning, supra, fully settles that question. The contrary doctrine, held in Teeters v. Lunborn, 43 O. S., 144, is expressly repudiated in the opinion of the above University case.
F. F. D. Albery, for plaintiff.
G. W. Aldrich and Barton Griffith, for defendants.
For the above reasons I find in favor of the plaintiff against said defendant John B. Weisman, for the amount of said deficiency, and judgment may be entered .accordingly.